## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**DARIN BOWIE**
       **Petitioner-Defendant,**

  v.                                            **Case No. 11-C-0734**
                                                  **(Criminal Case No. 07-CR-123)**

**UNITED STATES OF AMERICA**
       **Respondent-Plaintiff.**

### RULE 4 ORDER

A jury convicted petitioner Darin Bowie of conspiracy to distribute 5 kilograms or more of cocaine, five counts of distribution of cocaine, and two counts of possession with intent to distribute cocaine, and I sentenced him to 235 months in prison on all counts concurrent. Petitioner filed a notice of appeal, but his appointed appellate counsel moved to withdraw under Anders v. California, 386 U.S. 738 (1967), concluding that the appeal was frivolous. The court of appeals accepted the Anders submission and dismissed the appeal. United States v. Bowie, 392 Fed. Appx. 480 (7th Cir.), cert. denied, 131 S. Ct. 340 (2010). Petitioner now moves to vacate his sentence under 28 U.S.C. § 2255, arguing that his trial and appellate lawyers provided ineffective assistance of counsel.

### I. SECTION 2255

Section 2255 provides a basis for attacking a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §

2255(a). Section 2255 does not serve as a substitute for or do-over of a direct appeal, see Varela v. United States, 481 F.3d 932, 935 (7th Cir. 2007); claims previously raised and rejected on appeal are barred from collateral review absent some good reason for re-examination, and claims omitted on appeal may be considered on collateral review only if the petitioner can show good cause for failing to raise the issue previously and actual prejudice based on the alleged error, see, e.g., Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005). Ineffective assistance of counsel claims may be raised for the first time under § 2255, however. See Massaro v. United States, 538 U.S. 500, 504 (2003).

> The Rules require the district court to conduct a preliminary review of a § 2255 motion:
>
> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response . . . .

Rule 4(b), Rules Governing § 2255 Proceedings. Under this screening Rule, the district court may dismiss a § 2255 action without holding a hearing or requiring the government to respond if the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief. Gallo-Vasquez v. United States, 402 F.3d 793, 797 (7th Cir. 2005). The court may likewise dismiss a motion if the petitioner makes conclusory or speculative allegations rather than specific factual allegations. See, e.g., Aleman v. United States, 878 F.2d 1009, 1012-14 (7th Cir. 1989).

## II. DISCUSSION

In order to establish a claim of ineffective assistance of counsel, petitioner must show both that his attorney's performance was objectively deficient, and that he was prejudiced by the sub-par representation. Strickland v. Washington, 466 U.S. 668, 687 (1984). The court's

2

review of a lawyer's performance is highly deferential, reflecting a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. at 689. In order to establish prejudice, petitioner must show that there is a reasonable probability that but for his counsel's mistakes the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. Id. at 694.

In this case, petitioner alleges that his lawyers erred in five respects. I address each claim in turn.

**A.    Stipulations**

The parties entered into various stipulations in this case, regarding recorded calls and body wires (R. 626); controlled purchases (R. 627); Title III recordings (R. 628, 631); and drug identification (R. 629). The parties did not in these stipulations agree that petitioner made the drug sales at issue, or that the recordings contained his voice. The government called live witnesses to testify that petitioner sold them drugs and to identify his voice on the calls. The stipulations simply served to stream-line the trial by obviating the need for certain witnesses regarding background, inventory, authentication, and chemical analysis. (See Trial Tr. [R. 758] at 4-6.)[1]

Petitioner claims that his trial counsel did not explain these stipulations to him, or ask whether he agreed with them. He further argues that the stipulations deprived him of his Sixth Amendment right to confrontation. See Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011); Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009).

Stipulations of this sort are common in criminal trials. As the Supreme Court noted in

---

[1]Unless otherwise noted, record citations in this decision are to the record in the underlying criminal case, No. 07-CR-123.

3

Melendez-Diaz, 129 S. Ct. at 2542:

> Defense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case. It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis. Nor will defense attorneys want to antagonize the judge or jury by wasting their time with the appearance of a witness whose testimony defense counsel does not intend to rebut in any fashion.

Petitioner makes no showing that counsel's stipulations represented other than sound trial strategy in his case.

Petitioner notes that by stipulating his lawyer lost the opportunity to cross-examine witnesses, but he makes no attempt to show what he could have gained by such cross-examination. He does not claim, for instance, that cross-examination would have poked holes in the chemist's analysis of the drugs seized in this case. Nor does he claim that absent stipulations the government could not have met its burden on any particular issue. See George v. Smith, 586 F.3d 479, 485-86 (7th Cir. 2009) (holding that a habeas petitioner must make a showing as to the missing testimony and how it could have changed the outcome), cert. denied, 130 S. Ct. 3414 (2010); United States v. Farr, 297 F.3d 651, 658-59 (7th Cir. 2002) (holding that the defendant bears the burden of supplying sufficiently precise information regarding the testimony that could have been obtained had his counsel performed as desired and of showing how it could have produced a different result); United States v. Whited, No. 09 C 50274, 2010 WL 3951859, at *3 (N.D. Ill. Oct. 8, 2010) ("Whited has failed to identify any prejudice as he has not pointed to what particular benefit would have resulted from such a cross examination or in what specific way the witness's credibility would have been assailed.").

Petitioner's primary argument appears to be that the stipulations should not have been accepted absent his on-the-record acquiescence. He cites People v. Clendenin, 395 Ill. App.3d

4

412, 924 N.E.2d 462 (Ill. Ct. App. 2009), in which the court found a lawyer ineffective in stipulating to testimony absent his client's awareness and approval of the content of the stipulation. However, the Illinois Supreme Court reversed this decision, holding that stipulations not tantamount to a guilty plea do not require a defendant's personal admonishment and agreement. People v. Clendenin, 238 Ill. 2d 302, 939 N.E.2d 310, 322 (Ill. 2010). Petitioner makes no argument that any of the stipulations in his case amounted to an admission of guilt, and he cites no case holding that such garden variety stipulations require on-the-record approval from the defendant, or that entering into them, with or without the defendant's specific approval, is per se ineffective assistance.[2]

**B.   Gun Enhancement**

Petitioner next argues that his trial counsel erred in failing to object to a sentencing guideline enhancement for firearm possession under U.S.S.G. § 2D1.1(b)(1). He notes that because trial counsel did not object, the issue was not properly preserved for appellate review.

Petitioner and his appellate counsel raised this issue on direct appeal. The court of appeals stated:

> Counsel also considers whether Bowie could challenge the increase in offense level for possessing a gun, see U.S.S.G. § 2D1.1(b)(1), or the upward adjustment for obstructing justice, see id. § 3C1.1. Bowie's counsel did not object to either adjustment at sentencing, so our review would be for plain error. See, e.g., United States v. Jumah, 599 F.3d 799, 811 (7th Cir. 2010). Bowie asserts in his Rule 51(b) response that he didn't own or even know about the gun police found in his living-room closet. He points to the trial testimony of Melvin Barnes, a defense witness who said he put the gun in the closet while temporarily living with

---

[2]Petitioner argues that his appellate counsel was ineffective for not raising this issue on direct appeal. However, claims of ineffective assistance of trial counsel are almost always better brought under § 2255. See, e.g., United States v. Wilson, 481 F.3d 475, 485 (7th Cir. 2007). Further, because trial counsel did not provide ineffective assistance in this regard, appellate counsel did not err in failing to claim that he did.

5

> Bowie. Ownership is irrelevant, though, and Barnes conceded that he never saw the gun again after placing it in the closet. On the other hand, two police officers who searched Bowie's house with his consent testified at trial that he alerted them he had a gun in the living-room closet. The officers found the gun (with an obliterated serial number) in that closet along with 148 grams of cocaine, $20,000 in currency, and a scale. Thus, an appellate challenge to the upward adjustment for the gun would be frivolous.

Bowie, 392 Fed. Appx. at 483-84.

In the instant motion, petitioner discusses the guidelines applicable to weapon enhancements[3] and relevant conduct,[4] and argues that because of his lawyer's failure to object I failed to make findings regarding "reasonable foreseeability" and "scope of agreement." But he fails to address the evidence set forth by the court of appeals, which showed that he personally possessed a firearm during the course of the offense, and he makes no showing as to how his lawyer could have overcome these facts and demonstrated that it was "clearly improbable" that the gun was connected to the offense. See, e.g., United States v. Perez, 581 F.3d 539, 546 (7th Cir. 2009). Petitioner asks that the court conduct an evidentiary hearing on

---

[3]"The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1 cmt. n.3.

[4]"Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following: (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]" U.S.S.G. § 1B1.3(a).

6

this issue, but he fails to present the detailed and specific affidavit necessary to obtain one. In his sworn declaration, petitioner states that he "did not possess a firearm or weapon in connection to the conspiracy for which I was charged" (Case No. 11-C-734, R. 2 at 1 ¶ 2), but such a bald denial is insufficient. See Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002) (holding that to obtain a hearing the petitioner must make more than bare allegations).

**C.     Speedy Trial**

Petitioner next claims that his trial counsel failed to file a motion to dismiss under the Speedy Trial Act, despite his urging that counsel do so. Because trial counsel filed no such motion, the issue was not preserved for appellate review. See Bowie, 392 Fed. Appx. at 482 ("In his Anders submission, counsel first evaluates whether Bowie could argue that the delay in bringing him to trial violated the Speedy Trial Act, 18 U.S.C. §§ 3161-74. But by failing to seek dismissal on this ground in the district court, Bowie waived his right to enforce the Act's time limit.").

When a defendant claims that his lawyer provided ineffective assistance in failing to file a pre-trial motion, he must show that the motion was meritorious. United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005). Aside from noting that he was indicted in 2007 but did not go to trial until 2009, petitioner makes no attempt to show a speedy trial violation. The Speedy Trial Act generally requires that trial commence within 70 days of indictment or appearance, whichever occurs last. 18 U.S.C. § 3161(c)(1). However, the Act also excludes certain periods of time automatically, § 3161(h)(1), and permits the judge to exclude other periods based on the ends of justice, § 3161(h)(7). The record in this case shows that the case was designated "complex" by the magistrate judge handling pre-trial proceedings, resulting in the exclusion of

7

time under § 3161(h)(7)(B)(ii).[5] (R. 89.) After completion of the pre-trial proceedings before the magistrate judge, I held a scheduling conference, set the case for trial on April 21, 2008, and made a speedy trial finding. (R. 244.) At the April 4, 2008 final pre-trial, I reset the trial for June 16, 2008, and made a speedy trial finding. (R. 324.) At the June 6, 2008, final pre-trial, at petitioner's request I set his case for a projected change of plea hearing on June 26, 2008, and made a speedy trial finding. (R. 375.) Petitioner then had an apparent change of heart, and on June 26, 2008, at his request, I set the case over for status on July 30, 2008, and again made a speedy trial finding. (R. 387.) On July 30, 2008, petitioner's lawyer moved to withdraw (R. 424); I granted the motion and directed appointment of new counsel, set the case for status on August 11, 2008, and made a speedy trial finding (R. 426). On August 11, 2008, petitioner appeared with new counsel and on his request I set the case for another status on September 30, 2008, and made a speedy trial finding based on the need for new counsel to prepare. (R. 434.) On September 30, 2008, I set the case for final pre-trial on January 16, 2009, and trial on January 26, 2009, and made a speedy trial finding. (R. 494.) On January 16, 2009, I granted the government's motion to adjourn the trial, resetting it for final pre-trial on February 26, 2009, and trial on March 9, 2009, and made a speedy trial finding. (R. 557.) On February 23, 2009, on defendant's request, I reset the case for final pre-trial on April 17, 2009, and trial on April 27, 2009, and made a speedy trial finding based on the ends of justice, 18 U.S.C. § 3161(h)(7)(A), and the need to ensure continuity of defense counsel, § 3161(h)(7)(B).

---

[5]At the time of the magistrate judge's order, this provision was denominated § 3161(h)(8)(B)(ii).

8

(R. 580.) The case proceeded to trial on April 27, 2009. (R. 630.)⁶

In the instant motion, petitioner notes that the court granted a number of continuances, but he fails to address my concomitant speedy trial findings, and he makes no attempt to show that more than 70 days of non-excludable time elapsed. See 18 U.S.C. § 3162(a)(2) (providing that, with one exception not applicable here, the defendant bears burden of proof of supporting a motion to dismiss under the Act). Because petitioner has not demonstrated the merit of a speedy trial motion, his claim of ineffective assistance in this regard fails.⁷

**D.    Drug Quantity**

Petitioner next argues that trial counsel was ineffective for failing to properly object to drug weight at sentencing, and that appellate counsel was ineffective in failing to raise the issue on appeal. But, as with the firearm enhancement, this issue was addressed on direct appeal:

> As far as sentencing, counsel and Bowie (in his Rule 51(b) response) consider arguing that it was clear error to assign a drug quantity of 15 to 50 kilograms of cocaine. See, e.g., United States v. Vaughn, 585 F.3d 1024, 1031 (7th Cir. 2009), cert. denied, --- U.S. ----, 130 S. Ct. 3385, 177 L. Ed. 2d 306 (2010). But any argument about the quantity finding would be frivolous because after he was arrested, Bowie confessed to selling half a kilogram per week for 18 months.

---

⁶Petitioner also filed various motions (R. 185, 186, 197, 313, 558, 560), which triggered further exclusions of time. Moreover, although petitioner was the only defendant in this case who ultimately went to trial, he was for extended periods joined for trial with some or all of his twenty-five co-defendants, which also resulted in the exclusion of time. See 18 U.S.C. § 3161(h)(6) (excluding a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted").

⁷Petitioner argues that his appellate counsel was ineffective for failing to raise this issue on appeal as a plain error. But appellate counsel did raise this issue in his Anders brief, correctly noting waiver (not forfeiture) based on the failure to file a pre-trial motion to dismiss. Bowie, 392 Fed. Appx. at 482. Finally, I note that petitioner develops no Sixth Amendment speedy trial argument. See Doggett v. United States, 505 U.S. 647 (1992).

9

See United States v. Johnson, 342 F.3d 731, 734 (7th Cir. 2003) (explaining that drug dealer's post-arrest statements are especially reliable in establishing the extent of trafficking).

Bowie, 392 Fed. Appx. at 483.

Petitioner fails to address the appellate court's finding on this issue; nor does he explain what trial counsel should have done differently, or how counsel could have obtained a lower drug weight. In the sworn declaration accompanying his § 2255 motion, petitioner denies that he "was involved with the attributed quantity of drugs, assessed and attributed by the government and the court." (Case No. 11-C-734, R. 2 at 1 ¶ 1.) Such bare denials are insufficient, at sentencing, see United States v. Mustread, 42 F.3d 1097, 1101-02 (7th Cir. 1994), and on collateral review, see Galbraith, 313 F.3d at 1009.

At the sentencing hearing, petitioner denied being responsible for the drugs attributed to him, to membership in the conspiracy, and to making the controlled sales. He instead argued that the drugs he obtained were primarily for personal use. The jury obviously disagreed with this contention, and I did as well. (Sen. Tr. [R. 761] at 5-6.) I stated:

> The evidence is overwhelming in the form of recorded calls, coconspirator testimony and statements, and drug seizures that the Defendant conspired with [Calvin] Coleman and others, and that he distributed cocaine on a large scale. He wasn't simply a user who shared with others. That characterization is flatly contrary to the record.
>
> The Defendant also objects to his debrief statements, and states that he denied selling cocaine, but admitted he was selling clothes. That, too, is flatly contrary to the record. In his Mirandized post-arrest statement Defendant admitted that his principal means of income was selling drugs and knock-off clothing items. The evidence in this case, including the controlled buys, the wiretap, and the testimony from the co-conspirators demonstrated that Defendant sold cocaine in significant amounts, even if at times he also sold clothes. Defendant also denies selling drugs to Robert Wilson, but that's contrary to the very specific statements he previously made to Agents about his dealings with Wilson, and to Wilson's testimony in court, which I found credible.

10

> Defendant doesn't make any specific objection to the PSR's drug weight figure, as he's required to do under Seventh Circuit precedent. See U.S. vs. Mustread, 42 F.3d 1097, 1101-02, 7th Circuit, 1994. However, in an abundance of caution and perhaps being conservative, what I'm going to do is I'm going to adopt a drug weight of 15 to 50 kilograms in this case. And I do so for two reasons. First, that's the weight attributed to Calvin Coleman, who was Defendant's primary supplier. Second, that weight is consistent with Defendant's post-arrest statement set forth in Paragraph 23, that he sold a half a kilogram weekly for the past year-and-a-half.

(Sen. Tr. at 6-7.)

In his § 2255 motion, petitioner claims that his lawyer stipulated to the quantity of drugs, relieving the government of its burden of proof, but that argument misses the mark. Counsel stipulated to the weight of the drugs seized in the controlled buys, which ranged from 27 to 273 grams (R. 627, 629), but he did not stipulate that petitioner made those sales, much less that petitioner was responsible for the much higher weight I found (or that was set forth in the PSR.) Because petitioner has failed to identify specific acts or omissions of trial counsel pertinent to this issue, and has failed to show how the alleged errors affected the outcome, his claim fails.[8]

**E.    Plea Offer**

Finally, petitioner argues that trial counsel was ineffective in failing to timely inform him of the government's plea offer and failing to accept the offer of 70-87 months' imprisonment. Petitioner claims that he told his counsel he wanted to accept the plea offer and set a date for a change of plea. He further states that he wanted to accept the offer for 70-87 months but also wanted to challenge the gun and obstruction issues. However, counsel allegedly told him that the gun and obstruction enhancements were trial issues, and petitioner had to go to trial

---

[8] As indicated above, appellate counsel did raise this issue in his Anders brief, and the court of appeals agreed that it was frivolous. Petitioner fails to explain precisely what appellate counsel could or should have done differently.

11

to challenge them. He claims that had counsel properly advised him he would have accepted the plea offer.

A defendant who faults his lawyer for the breakdown of plea negotiations must establish a reasonable probability that, if not for counsel's deficient advice, he would have accepted a plea offer. Gallo-Vasquez, 402 F.3d at 798. The defendant must present "objective evidence" in support of such a claim; his own self-serving statement that he would have accepted the plea will not suffice. E.g., Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991); Ellzey v. United States, 210 F. Supp. 2d 1046, 1050-51 (C.D. Ill. 2002). But an unadorned, self-serving statement is all petitioner offers here. (Case No. 11-C-734, R. 2 at 1 ¶ 3: "I, Darin Bowie declare that, had I been properly advised by my counsel concerning the government's plea offer, I would have accepted the plea to the (70-87) months guideline range. But, I was told by my counsel that I could only challenge the gun and obstruction enhancements at trial.")

Further, petitioner's current claims are plainly contrary to the record. See Gallo-Vasquez, 402 F.3d at 798 (holding that the district court correctly looked beyond the face of the motion to contrary evidence in the record). As discussed above, this case continued for an extended time, with petitioner setting the case for change of plea, then changing his mind. I held final pre-trial conferences on April 15 and 16, 2009, to ensure that petitioner understood his decision (R. 613, 615), and on the morning of trial again asked if a last minute resolution was possible (Trial Tr. at 3). Petitioner elected to proceed to trial, and he raised no issues with counsel's presentation of the plea offer. At sentencing, petitioner's counsel expressed frustration that his client chose to stop cooperating with the government and take the case to trial, given the additional time he ended up facing. (Sen. Tr. at 13-14.) I asked why petitioner made this decision, and petitioner responded: "The reason that I really took this to trial, with all

12

due respect for the Court, and I know it was basically just -- I just didn't feel like I deserved 87 months." (Sen. Tr. at 16.)[9] Similarly, petitioner wrote a letter to the court prior to sentencing in which he stated that he went to trial "only because I don't think my part in this was 87 months." (R. 691.) In his PSR objections and during his sentencing allocution petitioner argued, in a similar vein, that he did not conspire with Coleman (or make the controlled buys) but rather was primarily a drug user who got involved with Coleman in relatively minor ways. (See Sen. Tr. at 18.) The record thus conclusively shows that petitioner was aware of a plea offer and rejected it because it called for more time than he believed his conduct warranted, not because his lawyer gave him bad advice.[10]

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's motion is **DENIED**, and this action is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner. A COA may issue only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a substantial showing is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

---

[9] He also alluded to concerns for his and his family's safety due to his earlier cooperation. (Sen. Tr. at 16.)

[10] Petitioner's claim also makes little sense, for it appears that in order to reach a guideline range of 70-87 months the obstruction and firearm enhancements must have been omitted from the proposed plea agreement.

13

For the reasons stated above, jurists of reason would not disagree with my conclusions, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 12th day of September, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge